

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00534-CV

Vishal **NEMARUGOMMULA**, M.D.,
Appellant

v.

**VHS SAN ANTONIO PARTNERS, LLC**, Baptist Medical Center, Sowjanya Mohan, M.D.,
Dimple Butler, M.D., Kimberly Mallery, M.D., and Physician Services, LLC,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2025-CI-15896
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:       Irene Rios, Justice
               Lori Massey Brissette, Justice
               H. Todd McCray, Justice

Delivered and Filed: March 18, 2026

AFFIRMED

In this appeal, appellant, Vishal Nemarugommula, M.D. ("Dr. Vishal"), challenges the trial court's failure to grant him a temporary injunction, during his pending lawsuit, that would enjoin appellee VHS San Antonio Partners, LLC d/b/a/ Baptist Medical Center ("Baptist") from reporting its suspension of his privileges for forty-five days to the Texas Medical Board ("TMB") and the National Practitioner Data Bank ("NPDB"). Dr. Vishal argues the trial court abused its discretion

in denying his injunction because: (1) Baptist is not immune from suit or injunctive relief; (2) he demonstrated he had a probable, imminent, and irreparable injury; (3) he put forth some evidence tending to sustain his causes of action; and (4) his claims are not barred by the statute of limitations. Based upon our review of the law and the record, we affirm the trial court's judgment.

## BACKGROUND

This lawsuit stems from a peer review of Dr. Vishal that resulted in his hospitalist privileges being revoked by Baptist. Dr. Vishal, a physician, owned and managed Alamo Physician Services, PLLC—a hospitalist group. He alleges hospitalists affiliated with Alamo's alleged competitor, Envision Physician Services, LLC ("Envision"), mistakenly believed he was poaching their patients, and used the peer-review process to eliminate him as a competitor.

Baptist's Medical Executive Board ("MEB") conducted the peer review of Dr. Vishal over the course of two years. Dr. Vishal alleges the MEB's peer review was a sham "orchestrated" by Baptist's Chief Medical Officer—a hospitalist and former director at Envision—along with two other members of the MEB—who he alleges were also employees and directors at Envision—who initially voted to summarily suspend and then permanently revoke his privileges. On June 15, 2023, the MEB summarily suspended Dr. Vishal's privileges due to its purported concerns surrounding appropriate consultation and assignment of patients, comprehensive documentation, and quality of patient care.

On June 27, 2023, the MEB reviewed Dr. Vishal's conduct, relying on Midas reports[1] and a prior Methodist Hospital NPDB report, among other things. The following day, the MEB

---

[1] Midas is an event reporting system that plays an important role in maintaining quality patient care at Baptist by helping hospitals track, analyze, and mitigate clinical events, medication errors, and operational performance to ensure regulatory compliance.

recommended the permanent revocation of Dr. Vishal's clinical privileges and membership in Baptist, effective immediately.[2] Two MEB members were Envision directors.[3]

Dr. Vishal then demanded a "fair hearing" in accordance with the bylaws, and a hearing was held in October 2024 before a fair-hearing panel.[4] During the interim period, Baptist allegedly raised entirely new allegations of improper chart access under HIPAA through its outside counsel. During the hearing, Dr. Vishal was required to prove MEB's recommendations were not supported by a preponderance of the evidence and were arbitrary, capricious, or in violation of Baptist's bylaws. The panel ultimately found the MEB's recommendation unsupported and suspended Dr. Vishal for forty-five days.

The panel's findings of fact specifically provided, among other things:

- Dr. Vishal accessed multiple patient records with no evidence that access was appropriate.

- Baptist had no clear written policy addressing physician record access and failed to provide appropriate training to Dr. Vishal.

- The MEB did not consider improper record access prior to revoking Dr. Vishal's privileges.

- Baptist had no clear written policy for patient referrals from the ER to hospitalists and failed to maintain a current accurate listing of primary care referral relationships.

- Baptist received multiple reports of Dr. Vishal failing to appropriately perform his patient rounds when requested by Baptist staff.

- Baptist had long-standing IT issues with physician communication with Dr. Vishal unresolved prior to his suspension, which contributed to his perceived lack of availability.

- There was "no evidence" to indicate "the presence of at least two direct competitors" on the MEB discussing the recommendation to suspend Dr. Vishal as having impacted his due

---

[2] Dr. Vishal was unable to return to practice at Baptist until June 30, 2025.

[3] Dr. Vishal also alleges the process was not anonymous because he was actually named in the documentation before the MEB, and there was enough detail about his business that it was not anonymous.

[4] While awaiting a fair hearing, Alamo collapsed as a going concern, and Dr. Vishal returned to outpatient family medicine. He alleges he suffered reputational harm, mental anguish, loss of income of approximately $3.4 million per year, and significant financial strain.

process rights, but it was nevertheless "inappropriate and may have influenced" the MEB's recommendation.

The panel also found: Dr. Vishal "met his burden of proof in showing revocation of his medical privileges was not an appropriate remedy in this instance and is not supported by the weight of the evidence."

The fair-hearing panel recommended: (1) Dr. Vishal be returned to the medical staff; (2) that a revision be filed with the NPDB reflecting that, following a fair hearing, his prior privileges were reinstated noting that he was suspended from the medical staff for a period of forty-five days; and (3) he be required to participate in additional education as approved by the medical staff in the areas of HIPAA compliance and patient medical record privacy. The panel explained suspension was "appropriate" because Dr. Vishal should have known accessing multiple medical records when he was not the attending nor the consulting physician was "extremely problematic." As the panel explained: When Dr. Vishal accessed "medical records and delet[ed] his reason for access, [he] revealed a lack of judgment and an indifference to patient privacy and the security of medical records." He "should have sought guidance from [Baptist's] senior leadership and received clear direction before accessing records in the volume he was accessing [them]." The panel also noted, however, that (1) there was "no collegial intervention" with Dr. Vishal by anyone at Baptist, (2) no evidence to show Baptist considered the access issue to be a breach "since it was not reported," (3) no opportunity for him to address the medical record access issues with the MEB, and (4) Dr. Vishal may have had legitimate and legally appropriate reasons to access a large number of the records.

The fair-hearing panel decision was affirmed by the governing board on June 30, 2025, and the forty-five-day suspension thereafter became final and reportable to the NPDB and the

TMB.[5] The Governing Board adopted and incorporated the findings of fact made by the fair-hearing panel in its decision and found, after a hearing that (1) Dr. Vishal was afforded a fair hearing and there was no substantial and prejudicial failure of the fair-hearing panel to comply with the bylaws or other governance documents; (2) neither the action or recommendation that prompted the fair hearing nor any substantial part was unreasonable, arbitrary, or capricious; and (3) the fair-hearing panel's decision was supported by the weight of the evidence and no bylaw, rule, or regulation relied on by the panel in reaching its decision lacked substantive rationality.

On July 14, 2025, Dr. Vishal filed suit alleging causes of action for tortious interference with existing contracts, tortious interference with prospective business relationships, and "malicious/sham peer review," among others. He sought a temporary restraining order and a temporary injunction.[6] On July 18, 2025, the trial court granted Dr. Vishal a temporary restraining order through August 15, 2025, restraining appellees from reporting his suspension. After a hearing on August 15, 2025, the trial court denied Dr. Vishal's application for a temporary injunction.

This appeal followed a few days later. On August 22, 2025, Dr. Vishal filed a motion for temporary orders to preserve the subject matter of the appeal. On September 11, 2025, we ordered appellees not to report appellant's suspension of his hospital privileges to the NPDB and the TMB until further order of this court. That order remains in place.

## TEMPORARY INJUNCTION

Dr. Vishal contends the trial court abused its discretion in denying his application for temporary injunction because he presented evidence proving: (1) he will suffer a probable,

---

[5] The governing board included three members and two additional members that abstained from participation.

[6] Dr. Vishal also sought monetary relief of more than $3 million, exemplary damages, treble damages, attorneys' fees, costs, and pre- and post-judgment interest.

imminent, and irreparable injury if his suspension is reported to the NPDB and TMB; and (2) he had a probable right to recovery.

## A. The Temporary Injunction Hearing

At the injunction hearing, Dr. Vishal contended he met his burden before the fair-hearing panel by showing the actions of the MEB were malicious because, as the fair-hearing panel itself found, he proved the revocation of his medical privileges was not supported by the weight of the evidence, and the MEB imposed an inappropriate remedy. The bulk of the testimony at the hearing concerned Dr. Vishal's improper access to patient records. Dr. Vishal testified the initial letter of suspension he was provided did not mention any concerns about improper access to records or other HIPAA violations, he never improperly accessed records or committed other HIPAA violations, and the issue was therefore not properly before the MEB or the fair-hearing panel. But even if it were, he testified that of the potentially 853 instances of improper access, only 25 were questionable. On cross-examination, he acknowledged the panel concluded he improperly accessed multiple records.[7]

Dr. Sowjanya Mohan, Baptist's Chief Medical Officer, testified the decision to initially suspend Dr. Vishal was the result of several MIDAS reports during a short period of time signaling an escalation in the concerns for patient safety, care, documentation, and unprofessional staff interactions. She further testified Baptist made a reasonable effort to investigate the allegations of improper chart access and staff MIDAS reports.[8] Dr. Mohan also testified she worked for Envision from October 2021 to January 2022, and Alamo and Envision were not in competition, despite the

---

[7] Dr. Vishal's declaration in support of his TRO and injunction provides substantially the same.

[8] She also testified there was a separate investigation from "privacy and compliance."

fair-hearing panel's finding to the contrary, because Envision was paid the same rate regardless of how many patients it saw.[9]

### B. Temporary Injunction Law and Standard of Review

As an extraordinary remedy that does not issue as a matter of right, the purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending suit. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A party seeking a temporary injunction must prove: (1) a cause of action; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury without the temporary injunction. *Butnaru*, 84 S.W.3d at 204; *see, e.g.*, *State v. City of Austin*, 714 S.W.3d 247, 253 (Tex. App. [15th Dist.] 2025, pet. denied); *see also* TEX. CIV. PRAC. & REM. CODE § 65.011.

An applicant has the burden of producing some evidence on each of these elements, but the applicant is not required to establish they will ultimately prevail at trial on the merits, only that they are entitled to preserve the status quo. *T.L. v. Cook Children's Med. Ctr.*, 607 S.W.3d 9, 34 (Tex. App.—Fort Worth 2020, pet. denied) (citing *In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex. 2002) (orig. proceeding); *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993)). The applicant must plead a cause of action and show a probable right to relief, which means presenting some evidence that tends to sustain the cause of action, i.e., evidence sufficient to raise a bona fide issue as to their right to ultimate relief. *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

We review that order for abuse of discretion. *See, e.g.*, *State v. Hollins*, 620 S.W.3d 400, 405 (Tex. 2020). We may not substitute our judgment for the trial court's unless the trial court's

---

[9] She also contested the allegation that the peer review was not anonymous at the MEB level, explaining exhibits at the injunction hearing revealing his identity were not presented to the MEB.

actions were so arbitrary that they exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204. We review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, deferring to the trial court's resolution of conflicting evidence, and mindful the trial court is the sole judge of the credibility of the witnesses and evidence. *Carpenter v. Daspit Law Firm, PLLC*, No. 01-22-00282-CV, 2023 WL 3956861, at *8 (Tex. App.—Houston [1st Dist.] June 13, 2023, no pet.); *Patel*, 445 S.W.3d at 419–20. No abuse of discretion exists if some evidence reasonably supports the trial court's denial of the injunction. *Henry v. Cox*, 520 S.W.3d 28, 34 (Tex. 2017).

### C. Baptist's Immunity

Dr. Vishal contends the trial court abused its discretion in denying him a temporary injunction because Baptist was not entitled to immunity under the Texas Medical Practice Act ("TMPA") since its actions in his peer review were malicious. *See* TEX. OCC. CODE § 160.010(b), (c) (cause of action does not accrue and civil immunity exists only in absence of malice); *Columbia Valley Healthcare Sys., L.P. v. Pisharodi*, No. 13-18-00660-CV, 2020 WL 486491, at *6–9 (Tex. App.—Corpus Christi–Edinburg Jan. 30, 2020, no pet.) (holding TMPA immunity did not apply due to evidence of malice). He specifically contends he put forth ample evidence showing Baptist acted with malice by showing a "reckless disregard" for his rights including that the fair-hearing panel found that the MEB's findings and revocation of his hospital privileges were not supported, that two of his direct competitors were allowed to sit on the MEB when it recommended revocation of his privileges, that his identity and affiliation with Alamo was not kept secret from the MEB members reviewing his case, and that Baptist failed to follow the procedural requirements in its bylaws in multiple material respects.

### 1. Texas Occupations Code § 160.010(b)

Texas Occupations Code § 160.010(b) provides a claim "does not accrue against . . . a health care entity from any act, statement, determination or recommendation made, or act reported, without malice, in the course of medical peer review." TEXAS OCC. CODE § 160.010(b).[10] Subsection (c) provides a "health care entity that, without malice, participates in medical peer review . . . is immune from any civil liability arising from that act." *Id.* § 160.010(c); *see also Kinnard v. United Reg'l Health Care Sys.*, 194 S.W.3d 54, 57 (Tex. App.—Fort Worth 2006, pet. denied) (same). Malice under section 160.010 is "a specific intent . . . to cause substantial injury or harm to the claimant."[11] *Kinnard*, 194 S.W.3d at 57–58 (quoting *Romero*, 166 S.W.3d at 214 n.2); *see also Johnston v. Christus Spohn Health Sys. Corp.*, No. 13-14-00418-CV, 2015 WL 10574287, at *5 (Tex. App.—Corpus Christi–Edinburg Mar. 31, 2015, no pet.) (noting same definition in negligent credentialing case); *accord Nowzaradan v. Ryans*, 347 S.W.3d 734, 742 n.8 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Specific intent to cause substantial injury or harm is not shown by demonstrating the actors "did not conduct an adequate investigation" or "had ulterior motives." *Kinnard*, 194 S.W.3d at 58.

---

[10] Medical peer review is "the evaluation of medical and health care services, including evaluation of the qualifications and professional conduct of professional health care practitioners and of patient care provided by those practitioners." TEX. OCC. CODE § 151.002 (providing term includes, among other things, evaluation of merits of complaint relating to health care practitioner and determination or recommendation regarding complaint; report made to medical peer review committee concerning activities under committee's review authority and implementation of duties of medical peer review committee by member, agent, or employee of committee).

[11] The definition of malice, as used in section 160.010(b) of the Texas Occupations Code, is borrowed from the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 41.001(7); *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 214 n.2 (Tex. 2005) (addressing § 160.010's qualified immunity as defense to malicious credentialing claim); *Kinnard*, 194 S.W.3d at 57–58; *see also St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 506 (Tex. 1997) (applying previous definition of malice set forth in section 41.001(7) in addressing immunity as defense to claims for defamation and tortious business interference). As the Texas Supreme Court explained in *Romero*, before 2003, that statutory definition of "malice" included either specific intent to cause substantial bodily injury or "actual awareness of, yet conscious indifference to, an extreme risk." *See Romero*, 166 S.W.3d at 214 & n.2. In 2003, the Legislature narrowed the definition to require only the specific intent definition of malice, making TMPA claims more difficult for plaintiffs to prove. *See Romero*, 166 S.W.3d at 215 n.2, 225 (stating same).

Accordingly, for a temporary injunction to be proper, Dr. Vishal would have had to demonstrate a cause of action and a probable right to relief for that cause of action, but also that the actions leading to the accrual of the cause of action included *malice*. *See* TEXAS OCC. CODE § 160.010(b); *City of Austin*, 714 S.W.3d at 253; *Intercontinental Terminals*, 354 S.W.3d at 897. Dr. Vishal therefore had to present some evidence sufficient to raise a bona fide issue as to his right to ultimate relief that Baptist had a specific intent to cause him substantial injury or harm beyond failing to conduct an adequate investigation or maintaining ulterior motives for the investigation. *See* TEXAS OCC. CODE § 160.010(b); *Kinnard*, 194 S.W.3d at 58.

## 2. Analysis

At its core, the purpose of the temporary injunction was to stop Baptist from reporting the fair-hearing panel and governance board decisions to the NPDB and the TMB. However, Dr. Vishal makes no argument of malice as to the governance board decision and did not dispute this when it was raised by Baptist in the trial court or in this court.

Moreover, Dr. Vishal's lone contention as to the actions of the fair-hearing panel concern the potentially improper shifting of burdens to him with respect to the inappropriate patient record access allegation. But even if the fair-hearing panel improperly shifted the burden to Dr. Vishal, there was no evidence of a specific intent to cause substantial injury or harm to Dr. Vishal in doing so. *See Romero*, 166 S.W.3d at 214 n.2 & 225; *Kinnard*, 194 S.W.3d at 57. On the one hand, the panel decision appeared to place the burden on him when it explained he: (1) should have known accessing multiple medical records when he was not the attending nor the consulting physician was extremely problematic, (2) accessing medical records and deleting his reason for access revealed a lack of judgment and an indifference to patient privacy and the security of medical records, and (3) should have sought guidance from Baptist's senior leadership and received clear

direction before accessing records in the volume he was accessing. But the panel also deliberately limited his suspension to forty-five days, further explaining, among other things: (1) Baptist failed to offer "collegial intervention" to Dr. Vishal; (2) Dr. Vishal did not have a chance to address the matter with the MEB; (3) there were material issues with respect to the integrity of the data related to the medical record access, and Dr. Vishal may have had legitimate and legally appropriate reasons for accessing a large number of the records; and (4) Baptist did not consider the access to be a breach since it was not reported. This is hardly "some evidence" of a specific intent to cause substantial injury or harm to Dr. Vishal. *See Romero*, 166 S.W.3d at 214 n.2 & 225; *Kinnard*, 194 S.W.3d at 57.

Dr. Vishal argues we ought to adopt the definition of malice set forth in *Pisharodi* providing it is "ill will or evil motive, or such gross indifference or reckless disregard for the rights of others as to amount to a knowing, unreasonable, wanton, and willful act." *Pisharodi*, 2020 WL 486491, at *7 (quoting *Luce v. Interstate Adjusters, Inc.*, 26 S.W.3d 561, 566 (Tex. App.—Dallas 2000, no pet.)). The *Pisharodi* court further explained malice did not require "personal spite or ill will": it was sufficient to demonstrate a defendant "committed wrongful acts in reckless disregard of another's rights and with indifference as to whether the party would be injured." *Id.* (quoting *Luce*, 26 S.W.3d at 566). It added malice could be inferred from a lack of probable cause. *See id.*

During oral argument, we asked why we should apply this definition over the definition provided by *Romero* and *Kinnard*, and counsel for Dr. Vishal explained *Pisharodi* was factually analogous. *See Pisharodi*, 2020 WL 486491, at *7. But *Pisharodi* is distinguishable. In *Pisharodi*, the central issue was whether the trial court properly denied a motion to dismiss pursuant to the Texas Citizens Participation Act—a statute not at issue here. *See* TEX. CIV. PRAC. & REM. CODE § 27.003. Moreover, unlike here, Pisharodi specifically brought a claim for malicious *prosecution*,

claiming he was subjected to "sham peer reviews," *not* malicious peer review. *See Pisharodi*, 2020 WL 486491, at \*3. Focused on the malicious prosecution claim, the *Pisharodi* court adopted the definition of malice from malicious prosecution jurisprudence. *See id.* at \*7. Based on the elements of that claim, the court applied the TCPA's "clear and specific evidence" standard and concluded Pisharodi established a prima facie case for each essential element of malicious prosecution. *See id.* at \*9. And based on that assessment, the court then rejected the appellant's section 160.010 immunity defense. *See id.* at \*10. But there was no discernable dispute between the parties as to the definition of malice in the context of an immunity claim under the Occupations Code, and the *Pisharodi* court did not otherwise directly address the issue. Nor was there any mention of the Supreme Court's decision in *Romero*, Section 41.001(7) of the Civil Practice and Remedies Code, or the Fort Worth Court of Appeals' decision in *Kinnard*.[12]

Accordingly, we cannot conclude the trial court abused its discretion because some evidence reasonably supported the trial court's denial of the injunction. *See Henry*, 520 S.W.3d at 34.[13]

---

[12] Even if we applied the *Pisharodi* definition, Dr. Vishal still fails to identify how the governance board's actions were malicious, and the record demonstrates the fair-hearing panel could hardly be described as committing wrongful acts in reckless disregard of Dr. Vishal's rights or with indifference as to whether he would be injured. *See Pisharodi*, 2020 WL 486491, at \*7. Moreover, even if we considered the evidence of malice as to the MEB and the relatively clear findings made by the fair-hearing panel as to the MEB's actions, the trial court was entitled to credit Dr. Mohan's conflicting testimony: (1) the decision to initially suspend Dr. Vishal was the result of several reports during a short period of time, (2) reasonable efforts were made to obtain the facts of the matter including charting investigations and an administrative investigation into the validity of the MIDAS reports, (3) that the MEB considered the improper chart access, (4) she did not vote on Dr. Vishal's suspension, (5) the suspension decision was made in furtherance of quality of care, and (5) that Alamo and Envision were not in competition. *See Carpenter*, 2023 WL 3956861, at \*8; *Patel*, 445 S.W.3d at 419.

[13] Since we conclude the trial court did not abuse its discretion by denying the temporary injunction because Dr. Vishal failed to demonstrate malice pursuant to Section 160.010, we need not consider whether Baptist was also entitled to the qualified immunity provided by the Health Care Quality Improvement Act of 1986, which was itself adopted as a part of the Texas Occupations Code. *See* TEX. OCC. CODE § 160.001 ("The Health Care Quality Improvement Act of 1986 (42 U.S.C. Section 11101 et seq.) applies to a professional review action or medical peer review conducted by a professional review body or medical peer review committee in this state on or after September 1, 1987."); TEX. R. APP. P. 47.1. Even if we were to consider it, the protections from liability under the HCQIA, unlike the Occupations Code, extend only to damages. *See* 42 U.S.C. § 11111(a)(1) (establishing qualified immunity from liability for damages for professional review actions, excepting civil rights claims); 42 U.S.C. § 11115(a) ("Except as specifically provided in this subchapter, nothing in this subchapter shall be construed as changing the liabilities or immunities

## CONCLUSION

For the foregoing reasons, we affirm the trial court's August 15, 2025 order denying Dr. Vishal's application for injunctive relief.[14]

Lori Massey Brissette, Justice

---

under law or as preempting or overriding any State law which provides incentives, immunities, or protection for those engaged in a professional review action that is in addition to or greater than that provided by this subchapter."); *Ching v. Methodist Children's Hosp.*, 134 S.W.3d 235, 242 (Tex. App.—Amarillo 2003, pet. denied) ("Texas has granted *additional* immunities to hospitals and others participating in professional medical peer review." (emphasis added)); *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 715 (Tex. App.—Amarillo 2018, pet. denied) (providing HCQIA sets out standard for medical professional review actions that if followed provide individuals and professional review bodies immunity from liability for damages); *see also Poliner v. Tex. Health Sys.*, 537 F.3d 368, 381 (5th Cir. 2008) (same). Nor do we consider Dr. Vishal's other contentions for the same reason. *See* TEX. R. APP. P. 47.1.

[14] Because we limit our review of the trial court's denial of a temporary injunction to the validity of the order, we express no opinion as to the underlying merits of the case. *See Henry*, 520 S.W.3d at 33–34. Nor do we express any opinion as to any other potential claim for damages Dr. Vishal might bring against Baptist for the MEB's suspension of his privileges or the applicability of Texas Occupations Code § 160.010 to any such claim. *See id.*